IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| RETHA M. PLAGEMAN, | ) | CASE NO. 3:04CV00034 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | By: B. Waugh Crigler |
| of Social Security, | | U. S. Magistrate Judge |
| Defendant | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's claim for a period of disability and disability income benefits under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The question presented is whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand the case for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an order enter REMANDING the case to the Commissioner for further proceedings.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff met the special earnings requirements of the Act through June 2002. (R. 25.) He also determined that the medical evidence established plaintiff suffered a seizure disorder, which was a severe impairments, but which did not meet or equal the requirements of any listed impairment (*Id.*) Further, the Law Judge found

1

that assessments from the Pain, Anxiety and Depression Center dated to 2003 were "not related to acceptable medical signs and findings" and did "not indicate what medical records or medical findings support its conclusions." (R. 24.) Alternatively, the Law Judge found that "even if the Center's records had supported the assessment, the Center's records and the assessment can not [sic] reasonably be projected backwards to support a finding of disability on or prior to June 2002." (*Id.*) Considering solely plaintiff's seizure disorder, however, the Law Judge did not find plaintiff's statements relating to her impairments to be "totally credible" (R.25.) Specifically, he believed that her "statements suggested that she had chosen a lifestyle that involved being a homemaker and mother and that she had engaged in part time work during some periods in the past but that she was devoting all of her time to staying home raising her children and caring for her family." (R. 19.) By application of the Medical-Vocational Guidelines ("grids") as a framework to plaintiff's exertional limitations, and by reference to some of the evidence offered by a vocational expert (VE) during the administrative hearing, the Law Judge found that jobs were available to the plaintiff in the economy and denied the claim. (R. 24-25.) Accordingly, he concluded that plaintiff was not disabled under the Act.

While the case was on administrative appeal to the Appeals Council, plaintiff submitted additional evidence. (R. 254-345.) The Appeals Council found that neither the record, nor the new evidence, nor the reasons the plaintiff advanced on appeal provided a basis to review the Law Judge's decision. (R. 6.) Accordingly, it denied review and adopted the Law Judge's decision as the final agency decision. This action ensued.

In the instant case, it is somewhat unclear whether the Law Judge ever made a finding that plaintiff's severe impairment prevented her from performing her past relevant work.

2

Instead, he found that since "the record does not document that the claimant has engaged in substantial gainful activity since 1999," and that "[claimant's] disability status cannot be established on the basis of work activity." (R. 17.) Although the Law Judge did not clearly state that he found that plaintiff carried her initial burden in the sequential evaluation process by demonstrating that her severe impairment prevented her from performing her past relevant work, he certainly proceeded to the next step in the sequential evaluation process by referring to the "grids" and the vocational evidence relevant to whether alternate jobs are available to her. Social Security Acquiescence Ruling (SSAR) 90-3(4) (recognizing that whenever vocational evidence is adduced, the inquiry has reached the final level); *See also*, 20 C.F.R. § 404.1520; *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992).

Thus, the burden shifted to the Commissioner to demonstrate that alternate gainful activity was available to plaintiff, which the Commissioner could discharge in this case only by the presentation of vocational evidence because there were non-exertional limitations on plaintiff's ability to perform work-related functions. *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981); *McLain v. Schweiker*, 715 F.2d 866 (4th Cir. 1983); *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987). Moreover, for the testimony of a VE to be relevant, the VE must have considered all the evidence in the record material to plaintiff's limitations and their effects on her work-related capacity. *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989). Otherwise, the Commissioner cannot be viewed as having properly discharged his sequential burden.

The Commissioner also is charged with making the initial evaluation of the medical evidence, assessing symptoms, signs and findings, and, in the end, determining the functional capacity of the claimant. 20 C.F.R. §§ 404.1527-404.1545; *Hays v. Sullivan*, 907 F.2d

3

1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The court should not substitute its judgment for that of the Commissioner in these matters, but must determine whether there is substantial evidence to support his conclusions. On the other hand, it is axiomatic that courts may remand a case to the Commissioner for the further development of the evidence where "good cause" has been shown. 42 U.S.C. § 405(g). What constitutes "good cause" draws beyond the boundaries of the substantive merits of the claim as presented in the record and is not constrained by whether the Commissioner's decision might have been supported by substantial evidence at the time of judicial review. *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981). Failure to provide "a full and fair hearing... and the failure to have such a hearing may constitute good cause sufficient to remand to the [Commissioner] under 42 U.S.C. § 405(g) for the taking of additional evidence." *Sims v. Harris*, 631 F.2d 26, 27 (4th Cir. 1980). In fact, "good cause" may be established where the "absence of counsel appears to prejudice a claimant." See, *Walker v. Harris*, 642 F.2d at 714.[1]

In the instant case, the Law Judge assessed plaintiff's medical evidence relating to her seizure disorder and depression. He found that plaintiff suffered a seizure disorder which was severe. The issue then becomes whether the Commissioner's initial finding that plaintiff could perform "jobs that involved light exertion and that did not expose the worker to heights, dangers or moving machinery" in spite of her seizure disorder was the result of a full and fair hearing of the evidence in the case. (R. 25.)

In this regard, the Law Judge conceded that plaintiff's medical records confirmed a history of a seizure disorder, although he seems to have been of the view that the frequency or

---

[1] We note that in the instant case plaintiff was represented by non-lawyer counsel.

4

severity of plaintiff's seizures were controlled by medication. While the Law Judge noted and discussed a report of an evaluation performed by Patricia Shipley, M.D., which incidently confirmed plaintiff's seizure disorder as well as the fact that plaintiff had discontinued her medications due to pregnancy shortly before her visit to the doctor, he determined that "evidence of isolated seizure activity during a period when the claimant was taking no medication or when her medication level was sub-therapeutic does not provide an adequate basis for a finding of disability." (R. 22, 147-149.) In doing so, the Law Judge focused only on the aspect of plaintiff's treatment which would have supported his finding to the exclusion of considerable substantial evidence from this physician, and in the record as a whole, revealing that plaintiff has experienced significant sedative side-effects from her medication regime which have an impact on her work-related abilities. For example, the Law Judge notes in his decision that Dr. Shipley found that plaintiff in one instance "became so sedated and felt so poorly that she discontinued all her medications," and later "due to sedation [plaintiff] discontinued her medications. (R. 22, 147-149.) However, he never explains why this evidence comes short of providing a good faith basis for what he clearly believed was the plaintiff's failure to follow prescribed medication.

Upon close examination, the record is replete with evidence that plaintiff constantly was being shifted between different medications in an effort to find stable ground between the extremes of uncontrolled seizures and the crushing side-effects of the medications. According to Dr. Shipley, plaintiff has taken Dilantin, phenobarbital, Depokote, Tregretol, and Trileptal. (R. 148.). As stated, some medications caused sedation, while others, like Depokote, caused gastrointestinal side-effects such as nausea, indigestion, and heartburn. (R. 204-10). Thus, the treating source evidence is entirely consistent on the point that plaintiff's seizures were

5

far from being under control. *See. e.g.* (R. 147-49, 150-51, 152-83, 184-89). The only evidence in the record providing support to any extent for the Law Judge's conclusions adverse to the plaintiff is a DDS Residual Physical Functional Capacity Assessment. (R. 190-96). This assessment conveys the impression that plaintiff has no limitations and offers a conclusion that plaintiff is able to perform a wide range of activities. (R. 194.) However, it represents no more than a bald conclusion concerning plaintiff's functional capacity and essentially ignores substantial parts of the medical record, including that which was provided by DDS physicians. It certainly contains no discussions and analysis relating to symptoms, signs or laboratory findings which the regulations require in support such opinions. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii) and 404.1528. This assessment is not entitled to the weight that the Law Judge believed it deserved.

Also giving the undersigned considerable pause are the findings by the Law Judge concerning the nature and severity of the individual seizures suffered by the plaintiff, regardless of their frequency. Although, as the Law Judge notes, Mubashir Khan, M.D. one of plaintiff's primary treating physicians, found that her seizures "lasted from a few seconds to less than a minute" (R. 250.), the Law Judge did not consider, at any point in his decision, the post-ictal phase following the seizures. The record demonstrates that the lingering effects of each seizure episode were considerable. For example, James W. Bowles, M.D., one of plaintiff's treating physicians, notes in May of 2000 that she had "post-ictal confusion and depression." (R. 147.) Undoubtably this evidence which is probative of plaintiff's residual functional capacity is due more attention than given by the Law Judge, which essentially was none.

Also disconcerting to the undersigned is the Law Judge's unreasonably unfavorable reading of Dr. Khan's response to questions about whether plaintiff was prevented

6

from sustaining regular work prior to and since June 30, 2002. (R. 248.) The question posed was whether the physician was reasonably certain that the combination of plaintiff's impairments prevented her from working. His initial response was that, "I cannot say yes or no, since to my records she is a home maker according to her, during the first interview in Nov 2001." (*Id.*) he continued, however, " If she could have been working, my answer would have been yes." (*Id.*) The Law Judge found from this that plaintiff had made a conscious decision to be a home maker rather than to return to gainful activity, thus signifying an ability to work. (R. 24.)

The undersigned is of the view that the Law Judge could not have drawn such a conclusion from this evidence. Dr. Khan simply is rehearsing the question "[I]f" plaintiff could have been working and then answered the question posed in the questionnaire, namely whether she was prevented from working. In other words, this physician opines plaintiff's medical impairments *did* prevent her from working. However, if the Law Judge found it was "hard to determine exactly what was being said" by Dr. Khan, it was incumbent upon him to seek clarification, particularly on such crucial treating evidence. The undersigned confesses that the Dr. Khan's written statement is not a model of clarity, but this certainly does not give the Law Judge free reign to construe it so it only support his conclusion that plaintiff is not disabled. On this point, a remand is needed in order to fully and fairly adjudicate plaintiff's claim.

Perhaps the most probative evidence relating to the effects of plaintiff's depression are revealed in a Mental Impairment Questionnaire submitted on August 12, 2003 by plaintiff's treating psychiatrist, Banerje Kordura M.D. (R. 241-247.) Dr. Kordura indicates in this questionnaire that plaintiff's depression has left her with either a poor or no mental capacity or aptitude to perform unskilled or skilled work. (R. 243-44.) She has only a fair capacity to

Case 3:04-cv-00034-NKM-BWC Document 8 Filed 11/15/04 Page 7 of 9 Pageid#: 44

perform at a consistent pace, interact appropriately with the public, maintain socially appropriate behavior and adhere to basic standards of neatness. (R. 244.)

The Law Judge conceded that, "If I accepted the assessment and if I found that the assessment related to the claimant's functioning capacity prior to the expiration of her insured status, I would find the claimant disabled." (R. 24.) Nevertheless, he rejected the assessment, *inter alia*, on the basis that the report failed to disclose the period being evaluated (*Id.*) Alternatively, the Law Judge found that even if he credited the assessment, he also would find that "the assessment can not [sic] reasonably be projected backwards to support a finding of disability on or prior to June 2002." (R. 24.) In other words, the Law Judge had difficulty seeing how the assessment could relate back to the period relevant to this claim.

Frankly, the only difficulty the undersigned has with these conclusions is that the entire record is replete with medical records mentioning the plaintiff's long history of depression. There are hardly any that don't make such reference. Also as noted above, the record more than amply indicates that plaintiff suffered sedative effects from her medication. This being the case, any reasonable basis for the Law Judge's decision not to accept Dr. Kordura's assessment evaporates. The substantial evidence here leads only to the conclusion that plaintiff has suffered severe, long-standing depression which has limited her functional capacity.

The problem presented on the instant record is that some clarity needs to be brought to the evidence concerning the degree to which plaintiff's impairments impact her work-related capacity. That is best done by the Commissioner in the first instance, and it should be done on a fully developed record in which any ambiguity may be clarified. Moreover, it is the view of the undersigned that the Commission has an obligation to articulate the reasons for

8

rejecting the evidence submitted on administrative appeal, which she did only in conclusory form. *Riley v. Apfel*, 88 F. Supp. 2d 572 (W.D. Va. 2000). This provides additional, though not independent, good cause to for further proceedings.

Therefore, the undersigned RECOMMENDS that an order renter REMANDING the case for further proceedings. The order of remand should direct that, in the event the Commissioner cannot grant benefits on the current record, she is to recommit the case to a Law Judge to conduct supplemental proceedings in which both sides may introduce additional evidence.

The Clerk is directed to immediately transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/
U.S. Magistrate Judge

November 15, 2004
Date

9